UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

WILLIAM TERRY,

                Plaintiff,

    -against-


HAROLD L. GARY, individually,                       **MEMORANDUM DECISION**

MICHAEL ROSENZWEIG, individually,                 **AND ORDER**

and the COUNTY OF PUTNAM, N.Y.,

                                                                               08 Civ. 8127 (GAY)

                Defendants.

---------------------------------------------------------------------X


       Plaintiff William Terry commenced this action against his former employer, Defendant County of Putnam, and his former supervisors Defendants Michael Rosenzweig and Harold Gary, claiming Defendants violated his federal constitutional rights in retaliation for his threat to report alleged safety violations within his department to an outside board.  Specifically Plaintiff Terry alleges that his right to equal protection was violated by selective prosecution, and his First Amendment rights were violated via retaliatory conduct by the Defendants.  Currently before this Court are Defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure.[1]  For the reasons set forth below Defendants' motion is granted.

## I. BACKGROUND

Plaintiff was hired by Defendant Putnam County as an electrician in the County Highway Department on February 16, 1993.  In approximately 1997, Defendant Rosenzweig was hired by the Highway and Facilities Department and became Plaintiff's supervisor.  Defendant Harold Gary has been the Commissioner of Highways for Putnam County since approximately 1991 and was Defendant Rosenzweig's immediate supervisor.

Plaintiff alleges that in the years after Defendant Rosenzweig became his supervisor, unqualified and/or unlicensed workers did electrical work and corners were cut on electrical jobs, leading Plaintiff to repeatedly voice concerns to Defendant Rosenzweig about safety.  Plaintiff was the sole electrical license holder in the department and was to oversee the work of unlicensed electricians.

Plaintiff states that in 2005 protocols were adopted by the County, in conjunction with the New York Board of Fire Underwriters ("Electrical Board"), to address liability concerns regarding unlicensed electricians performing work for the department while he was out sick for three months.  In February of 2007 Plaintiff was again out of work sick for several months. Upon his return, he claims to have found that unlicensed workers were once again performing unsupervised electrical work, and not in compliance with the national electric code.  Plaintiff alleges that throughout 2005 and into 2006 required paperwork was not filed for inspections of electrical work and there was insufficient

---

[1] This motion is before me on the consent of the parties, pursuant to 28 U.S.C. §636(c).

oversight of unlicensed work. Plaintiff discussed these problems with Defendant Rosenzweig as well as with fellow coworkers.

Sometime in early March 2007 – the exact date is contested -- Plaintiff and Defendant Rosenzweig had a heated discussion regarding these same issues. Plaintiff threatened to go out of the department to the Electrical Board to report what he saw as safety violations if action were not taken to rectify the deficient work. Defendant Rosenzweig verbally reported Plaintiffs safety complaints to Defendant Gary.

On March 8, 2007 Defendant Rosenzweig wrote a memo to Defendant Gary alleging that Plaintiff had made death threats against Rosenzweig and two other department employees in the presence of several staff members. In response, Defendant Gary suspended Plaintiff for thirty days without pay on March 12, 2007. Defendant Gary preferred three charges of misconduct against him on March 20, 2007 in accordance with Section 75 of the Civil Service Law of the State of New York. These charges alleged that Plaintiff made "derogatory, offensive and inappropriate comments to employees and co-workers," "used words and acts of intimidation and made threats of physical violence against co-workers" and "caused disruption and committed inappropriate workplace behavior through words and acts of intimidation, threats of violence, and derogatory and inappropriate comments to co-workers."

Plaintiff was allowed to go back to work in June, 2007, but in a different location and no longer under the supervision of Defendant Rosenzweig. However, on September 17th, 2007, Defendant Gary again suspended Plaintiff for thirty days without pay and preferred another set of disciplinary charges. Said charges alleged misconduct and insubordination for failure to properly fill out and return certain documents.

In his defense to the first set of charges, Plaintiff claims that whatever inappropriate language he may have used in the workplace – and he specifically denies the death threats attributed to him – it was no worse than language used on a regular basis by virtually all staff members in that department.  Obscenity and threats of violence were common place in the department, according to Plaintiff, and not something taken seriously by supervisors.  Plaintiff asserts that both sets of charges preferred against him were a pretext used by Defendants Gary and Rosenzweig to keep him from reporting unsafe practices to the Electrical Board.  Defendants aver that the charges had nothing to do with Plaintiff's threat to go to the Electrical Board, and that Plaintiff's termination was solely in response to his threats of violence and other inappropriate conduct.

On October 30th, 2007 and January 22, 2008 hearings were convened before an arbitrator in accordance with a collective bargaining agreement between the Defendant County of Putnam and the Civil Service Employees Association.  On May 27th, 2008 the arbitrator issued an Opinion and Award finding just cause to terminate Plaintiff's employment based on the first set of charges but not the second.  On June 6th, 2008 Defendant Gary adopted the findings of the arbitrator and terminated Plaintiff's employment with the County.  Plaintiff thereafter brought an Article 78 action against Defendants Gary and Putnam County in New York State Supreme Court to vacate, set aside and nullify the disciplinary hearing and determination, which was denied on August 19, 2008.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate only where there are no genuine issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Bryant v. Mafucci, 923 F.2d 979, 982 (2d Cir. 1991). A fact is material when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences in favor of that party from the submitted affidavits, exhibits, interrogatory answers, and depositions. Anderson, 477 U.S. at 255; Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### B. Plaintiff's Section 1983 Claims

In order to state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed under

the Constitution of the United States." Snyder v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

Here, there is no issue as to whether the challenged conduct – namely Plaintiff's termination from employment with the Defendant County – was perpetrated by officials acting under the color of state law. The remaining issue is whether Plaintiff has alleged a violation of his constitutional rights.

1. *Plaintiff's Equal Protection Claim*

The Supreme Court in Engquist v. Oregon Dept. of Agr. held that "the Equal Protection Clause does not apply to a public employee asserting a 'class of one' theory of liability." 553 U.S. 591, 594. Subsequently, in a case involving a public employee asserting both "class-of-one" and selective enforcement claims under the Equal Protection Clause, the Second Circuit cited Engquist for the proposition that "a public employee does not state a claim under the Equal Protection Clause by alleging that he or she was arbitrarily treated differently from similarly situated employees unless the different treatment was based on the employee's membership in any particular class." Porr v. Daman, No. 07-1623, 2008 WL 4831426, at *2 (2d Cir. Nov. 7, 2008). (Emphasis added). In Porr, the plaintiff did not allege "that any adverse employment action was the result of his membership in any particular class, and thus his equal protection claims fail." Id.

Plaintiff Terry alleges that Defendants subjected him to the selective enforcement of department policy in violation of his equal protection rights, in order to inhibit and retaliate against speech protected by the First Amendment. He does not claim to be part of any particular class. Thus, his equal protection claim fails.

Plaintiff misconstrues the holding in Kamholtz v. Yates County, No. 09-0026, 2009 WL 3463481, at *1 (2d Cir. Oct. 29, 2009), where the court dismissed a selective enforcement claim. The court in Kamholtz held that "[t]hus, even assuming that appellant, a public employee, is not precluded from pursuing a selective enforcement claim, see Engquist v. Oregon Dept. of Agric., 553 U.S. 591 (2008), he nevertheless has failed to sufficiently state his claim." Id. This outcome is not at odds with Porr, as Plaintiff argues. In Kamholtz, the plaintiff had failed to meet the basic threshold required when pleading a claim. Thus, that court did not need to reach the issue of whether a selective enforcement claim may be brought by a public employee post-Engquist. Further, the remaining cases cited by Plaintiff fail to support his argument. In Manbeck v. Town of Lewisboro, No. 08-1543, 2009 WL 1505253, at * 1 (2d Cir. May 29, 2009), plaintiffs were not public employees. In Jarrach v. Sanger, No. 08-2807, 2010 WL 2400110, at *1 (E.D.N.Y. June 9, 2010), the plaintiff asserted a general violation of her equal protection rights. The court then undertook an analysis to determine if either a selective enforcement or class-of-one claim was supported by the facts. There too, the holding is in line with Porr and Kamholtz: "Since Plaintiff does not allege a *class-based selective enforcement claim*, her Section 1983 claim can, thus, only be interpreted as to state a 'class-of-one.'" Id. at *9. (Emphasis added).

For the foregoing reasons, Plaintiff's equal protection claim is dismissed.

2. *First Amendment Retaliation and Chilling Claims*

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). It is well settled, however, that "a public employee

-7-

speaking in his official capacity is not speaking as a citizen for First Amendment purposes." Ruotolo v. City of New York, 514 F.3d 184,189 (2d Cir. 2008) (citing Garcetti, 547 U.S. at 421-22). When public employees make statements pursuant to their official duties, the Constitution does not insulate their communications from employer discipline. Garcetti, 547 U.S. at 421.

The Second Circuit in Weintraub v. Board of Ed. held that "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." 593 F.3d 196, 203 (2d Cir. 2010). Further, the Supreme Court in Garcetti explained that the proper inquiry into whether a public employee's speech is "pursuant to" his duties is a "practical one." 547 U.S. at 424.

Here, Plaintiff alleges that he was retaliated against for having complained about, and threatened to report to outside authorities, inadequate and unsafe electrical work being done by the department. Although the Complaint states that Plaintiff "had neither a job duty nor job responsibility" to express his concerns either to his supervisor or to the Electrical Board, the facts belie this statement. Plaintiff was an electrician for the county. In fact, he was the sole license holder in the department. Further, Plaintiff asserts that a protocol was developed for his department in 2005, with the assistance of the Electrical Board, because Plaintiff "is the only one that should be doing electrical work for the county. Other people under his direction could do it, but he's responsible for that, and . . . they need to start filing for this work in the proper way." Terry Dep. 49:17-21, Mar. 29, 2010. If Plaintiff is primarily responsible for electrical work done by the county, then his voicing of concern about that work is pursuant to his official duties.

Thus, the Court concludes that his statements to Defendant Rosenzweig, including the March 2007 threat to go to the Electrical Board, were not protected speech. As such, Plaintiff's First Amendment claims fail.

### III. MUNICIPAL LIABILITY CLAIM

As Plaintiff has no remaining constitutional claims, his Monell claim against Defendant Putnam County is dismissed. See Zahra v. Town of Southhold, 48 F.3d 674, 685 (2d Cir. 1995).

### IV. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are **granted**. The Clerk of Court is directed to terminate the motions (Docket #26 and #36) and close the case.

Dated: October 27, 2010

White Plains, New York

**SO ORDERED:**

GEORGE A. YANTHIS, U.S.M.J.